CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **JEFFREY HARRISON WRIGHT** | ) | Case No. 7:22-cv-00395 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **LISA FERGUSON, et al.,** | ) | By: Hon. Michael F. Urbanski |
| Defendants | ) | Senior United States District Judge |

**MEMORANDUM OPINION**

Jeffrey Harrison Wright, an inmate in the custody of the Virginia Department of Corrections who currently is incarcerated at Keen Mountain Correctional Center, filed this action under 42 U.S.C. § 1983 against nurse Lisa Ferguson and transportation officers Anthony Crawford and James Robert Wright. Plaintiff Wright complains that the defendants acted with deliberate indifference to his serious medical needs while he was a pretrial detainee being held at the New River Valley Regional Jail (NRVRJ). Defendants have filed a motion for summary judgment, to which Wright responded, and defendants have replied. ECF Nos. 54, 60, 61.[1] For the reasons set forth below, defendants' motion for summary judgment is **GRANTED** and Wright's claims are **DISMISSED**.

**I. Background**

Wright was a pretrial detainee at the NRVRJ when he was involved in an altercation with another inmate that left him with a broken jaw. The altercation occurred on September

---

[1] The defendants filed two previous motions for summary judgment, both of which were denied without prejudice. See ECF Nos. 26, 27, 34, 42, 43, 53. In their pending motion for summary judgment, they incorporate the statements of fact from their previous motions for summary judgment. Defs.' Mem. in Support of Second Renewed Mot. for Summ. J., ECF No. 55 at 1–2.

20, 2021, and that same day he was taken to the jail medical clinic where his jaw was x-rayed. Wright was returned to his housing in general population and given an ice pack to control swelling. After the x-ray confirmed that his jaw was broken, Wright was sent to the NRVRJ medical clinic for observation and a liquid diet was ordered. Wright remained in medical housing until the next day, September 21, 2021, in the afternoon. The medication record indicates that Wright was given acetaminophen for pain relief at 7:30 a.m. on September 21, 2021. Med. R., ECF No. 27-5 at 8. That afternoon, defendant Ferguson went to Wright's cell and told him that there was nothing they could do for him, and Wright was returned to general population. Wright told Ferguson that he had a broken jaw, needed to be seen by a doctor, and needed pain medication. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 2–3.

That evening, when Wright was in general population, a nurse went by his cell as part of the evening pill pass. She told him that no medications had been ordered for him. Id. at 3. Wright filed a written request for medical attention, asking for pain medication and to be seen by a specialist. The next day, September 22, 2021, he received a response telling him that he was seen by the nurse the previous day, and that ibuprofen had been ordered for him. Med. R., ECF No. 30-1 at 7–8.

On September 22, 2021, Wright was "in so much pain that [he] refused housing," hoping to be returned to the medical clinic to be seen by a doctor or to be transported to the local emergency department for treatment. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 3–4. Medical records from the jail indicate that 600 mg of ibuprofen to be taken twice a day for 14 days was ordered for Wright on the morning of September 22, 2021, and he received the medication starting that morning. Med. R., ECF No. 27-2 at 2. Wright agreed to being

2

placed in isolation that evening and claims that in the two days after the assault, he was given one dose of pain medication and no food that he could eat because he could not chew. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 4; Office Note, ECF No. 49-1 at 16. At some point on September 23, 2021, Wright signed a form to return to general population because he did not want to be in isolation, but still did not see a doctor and was given no food he could eat. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 4–5.

On September 24, 2021, Wright was transported to a local hospital to see a doctor who specialized in head and neck surgery. The doctor ordered a CT scan of Wright's jaw. Id. at 5. The scan revealed a closed fracture of the left condyle, a closed fracture of the right condyle, and an open fracture of the right mandibular body. Med. R., ECF No. 49-1 at 1–2. The doctor recommended that Wright proceed to the emergency room for admission and "add-on for operative intervention." Id. at 1, 4. Rather than take Wright to the emergency room for admission, defendant transportation officers Crawford and Wright returned him to the NRVRJ. Compl., ECF No. 6 at 5–6. The same day, Wright complained in writing to defendant Ferguson that he should have been admitted to the hospital for surgery and he also requested pain medication. He received a response six days later, on September 30, 2021, stating, "We have no idea what you are referring too. [sic] We have not spoken to your doctor and were not at your appointment." Med. R., ECF No. 30-1 at 5–6.

On September 25, 2021, Wright asked in writing for additional medication for the severe pain in his jaw and was told that he was getting ibuprofen on the morning and evening pill pass. Med. R., ECF No. 30-1 at 3–4. Wright remained at NRVRJ until he was transported to the hospital on September 30, 2021, for surgery. For the six days between his first hospital

3

visit and his return for surgery, Wright claims that he was in pain and despite the order for a liquid diet, was not given food he could eat. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 6.

Wright had surgery on his jaw on September 30, 2021. During surgery, the doctor discovered a right mandibular body abscess which was incised, drained, and irrigated. Med. R., ECF No. 49-1 at 3–4. Upon discharge from the hospital on the same day he had surgery, Wright was prescribed an antibiotic to be taken for ten days, oxycodone to be taken as needed for pain for up to five days, Zofran for nausea for up to four days, and a mouth rinse. He was to return for a follow-up visit to the doctor in ten days. Med. R., ECF Nos. 27-10, 27-11. Wright stayed in medical housing at NRVRJ until October 12, 2020. ECF No. 27-8. Wright does not complain about the medical care that he received after September 30, 2021, but claims that in addition to the pain he suffered for the 10 days between the time he was assaulted and the surgery, he is permanently disfigured and has a hole under his jaw as a result of the infection. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 8.

Wright claims that the delay in medical treatment he received between September 20, 2021, through September 30, 2021, shows that defendants were deliberately indifferent to his serious medical needs. He claims that he should have been transported to an outside medical facility for emergency care on the day his jaw was broken. He seeks relief under the Fourteenth Amendment via 42 U.S.C. § 1983 and asks for an unspecified amount of damages for pain and suffering and for mental anguish. Am. Compl., ECF No. 6.

4

**II. Analysis**

Defendants move for summary judgment, arguing that no reasonable juror could find on the facts of this case that the defendants failed to provide medical care in violation of the Fourteenth Amendment. Defendants also claim that even if they are found to be deliberately indifferent to Wright's serious medical need, they are entitled to qualified immunity.

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then go beyond the pleadings and affidavits and show that there are "'specific facts showing that there is a genuine issue for trial.'" Giles. v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 702 (4th Cir. 2023) (quoting Celotex, 477 U.S. at 702).

5

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Id. (citing Ballengee v. CBS Broad., Inc., 968 F.3d 344, 349 (4th Cir. 2020)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting Tolan v. Cotton, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Greene v. ICON Gov't and Pub. Health Solutions, No. 24-1647, 2025 WL 1589254, at *1 (4th Cir. June 5, 2025) (per curiam) (quoting Anderson, 477 U.S. at 248). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). "Even when the facts themselves are not in dispute, a genuine dispute of material fact about the inferences to be drawn from those facts precludes summary judgment." United States v. McClellan, 44 F.4th 200, 205–06 (4th Cir. 2022) (citing World-Wide Rts. Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992)).

6

**B. Rights of a Pretrial Detainee**

"[A] pretrial detainee's claim of constitutionally inadequate medical care is governed by the Fourteenth Amendment, rather than the Eighth Amendment." Stevens v. Holler, 68 F.4th 921, 931 (4th Cir. 2023). "[W]hereas the Eighth Amendment only protects post-conviction detainees from cruel and unusual punishment, the Fourteenth Amendment Due Process Clause protects pretrial detainees from being punished at all." Short v. Hartman, 87 F.4th 593, 606 (4th Cir. 2023) (internal quotation marks omitted). For nearly 30 years, appellate courts, including the United States Court of Appeals for the Fourth Circuit, applied the Eighth Amendment standard to Fourteenth Amendment claims of deliberate indifference brought by pretrial detainees. Id. at 607–08 (collecting cases). The Eighth Amendment test has both an objective component and a subjective component. See Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) ("[T]he plaintiff must demonstrate that the defendant acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component.") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To establish the subjective component, a convicted inmate must show that a defendant had actual knowledge of his serious medical needs and the related risks but nevertheless disregarded them. Id. at 357 (internal quotation marks omitted).

However, in Short, the Fourth Circuit concluded that the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015), abrogated its prior precedent requiring the application of the subjective component of the Eighth Amendment test in cases involving pretrial detainees. Short, 87 F.4th at 608–610. Instead, a pretrial detainee's claim of

7

constitutionally inadequate medical care must be evaluated under an entirely objective standard:

> The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in Kingsley's words, "objectively unreasonable," 576 U.S. at 397, 135 S.Ct. 2466: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly.

Id. at 611. It is uncontested that Wright was a pretrial detainee. Therefore, his claim is assessed under the Fourteenth Amendment and the objective test described above.

### C. Deliberate Indifference in the Context of Medical Delay

To prevail on a claim for deliberate indifference to a serious medical need Wright must show that (1) he had a medical condition that posed a substantial risk of serious harm; (2) the defendants intentionally, knowingly, or recklessly acted or failed to act appropriately to address the risk the condition posed; (3) the defendants knew or should have known (a) that Wright had the condition and (b) that the defendants' action or inaction posed an unjustifiably high risk of harm; and (4) as a result, Wright was harmed. Id.

Wright underwent surgery to repair his fractured jaw ten days after he was injured and he does not allege that the treatment he received at the hospital or the care he received thereafter at the NRVRJ was inadequate in any way. Therefore, his claim is analyzed as one based on delay of medical care because ten days passed between his injury and the surgery. "[A] plaintiff can maintain a deliberate indifference claim based solely on the theory that the defendant withheld, delayed, or interfered with medical treatment." Krell v.

8

Braightmeyer, 828 F. App'x 155, 159 (4th Cir. 2020) (per curiam). The Fourth Circuit has explained the following regarding a claim that medical care was delayed:

> Where a deliberate indifference claim is predicated on a delay in medical care, we have ruled that there is no [Fourteenth] Amendment violation unless "the delay results in some substantial harm to the patient," such as a "marked" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." See Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018).

The court will apply the deliberate indifference analysis in the context of Wright's claim that medical care was unnecessarily delayed. Turning to the first prong of the deliberate indifference analysis, "[a] condition is objectively serious if it is 'diagnosed by a physician as mandating treatment' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Short, 87 F.4th at 612 (quoting Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)). It is indisputable that Wright's broken jaw was an objectively serious medical condition.

Looking at the second prong, whether the defendants intentionally, knowingly, or recklessly acted or failed to act appropriately to address the risk the condition posed, the court looks first to whether the delay exacerbated the injury. On the record before the court, it does not appear that the 10-day delay in treatment exacerbated Wright's injury.

Wright is correct that when he saw the doctor on September 24, the doctor recommended that he be admitted to the hospital and that the jaw-repair surgery be

9

scheduled, but despite the recommendation, defendants Crawford and Wright returned him to the jail where he had to wait six days before being returned to the hospital for surgery. However, notwithstanding the delay, the surgery appears to have been successful. On October 7, 2021, approximately one week after the surgery, Wright requested a soft diet and stated that nothing was wrong with him. Med. R., ECF No. 27-12 at 2.

Wright complained about his jaw twice over the next year. A note from the jail medical clinic states that on October 20, 2021, approximately three weeks after the surgery, Wright was taken to the clinic complaining of a painful bump on his jaw. The medical provider described a "large, draining pustule" on his left mandible which Wright said he had noticed the previous day. He was prescribed an antibiotic to take twice a day and acetaminophen for pain. Med. R., ECF No. 27-2 at 1. During the surgery, the surgeon had noted an abscess in Wright's jaw that was incised, drained and irrigated. Med. R. ECF No. 49-1 at 1–4. Wright claims that had he been treated sooner after his jaw was broken, "the infection would not have set in and I would not have a hole underneath my left jaw. Permanent Facial Disfigurement." Resp. to Renewed Mot. for Summ. J., ECF No. 49 at 8. However, there is no further mention of an infection or abscess in the medical records and no reference in the record to any type of facial disfigurement. Wright's assertion that the delay in the surgery caused long-lasting complications or that he is disfigured is conclusory and not supported by the record.

The only other mention of Wright's jaw was on August 7, 2022, when Wright reported that he still was experiencing numbness in his jaw at the surgery site. Med. R., ECF No. 27-2 at 1. The record does not indicate that medical staff took any action and in his

10

complaint, Wright does not mention numbness or any other problems with his jaw following the surgery. Thus, the evidence in the record does not support the conclusion that the delay in medical treatment resulted in an exacerbation of Wright's injury.

Looking next at whether the delay unnecessarily prolonged Wright's pain, delaying the surgery undoubtedly increased the number of days that Wright spent in pain. However, Wright received 600 mg of ibuprofen twice a day from September 22, 2021, until he went to the hospital for his surgery, except for September 24, when he went for his first outside doctor appointment. Med. R., ECF Nos. 27-5 at 8; 49-1 at 13. While Wright may have preferred more or stronger pain medication, "[p]rescribing medication is a question for medical professionals." Burns v. Ashraf, No. JKB-18-03100, 2019 WL 4169838, at *6 (D. Md. July 30, 2024) (citing United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) and Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977)). The Fourth Circuit consistently has held that a disagreement between an inmate and his provider over the inmate's proper medical care falls short of showing deliberate indifference. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). See also Oglesby v. Abbassi, No. 3:12CV194, 2013 WL 4759249, at *7 (E.D. Va. Sept. 4, 2013) (determining that inmate failed to state a claim for deliberate indifference against doctor who prescribed milder pain relievers than those desired by the inmate). Notably, although Wright complained about pain by filing medical grievances asking for pain relief on September 21, September 24, and September 25, ECF No. 30-1 at 3–8, he did not request additional pain relief from September 26 through September 30, the day of his surgery.

11

In sum, while defendant officers Crawford's and Wright's actions of returning Wright to the jail rather than having him admitted to the hospital through the emergency room increased the number of days he was in pain, the pain was treated, and the fact that Wright continued to have pain does not mean that the defendants were deliberately indifferent to Wright's serious medical needs. Additionally, "[w]hen viewed in the context of the entire course" of Wright's treatment for his broken jaw, "this conclusion is even more apparent." Carter v. Ulep, No. 1:13cv1425 (LMB/JFA), 2015 WL 539562, at *7 (E.D. Va. Feb. 6, 2015). In the ten days between Wright's jaw being broken and his surgery, he was assessed by examination and imaging, received pain medication, was offered restricted housing or protective custody, was referred to a surgeon for consultation and transported to the appointment, and was transported to the hospital for surgery. These actions do not demonstrate deliberate indifference by the defendants. See Wallop v. Buck, No. PWG-13-2355, 2014 WL 4749242, at *12–13 (D. Md. Sept. 22, 2014) (finding that almost two-month delay for surgery to repair broken jaw was not deliberate indifference when delay was caused by a disagreement between providers as to whether it was a dental or medical problem, waiting for approval of appointments outside the prison facility, and the surgeon's schedule, all while the plaintiff received medication for pain) and Ali v. Correctional Medical Services, Inc., No. DKC-10-1676, 2011 WL 4352001, at *10 (D. Md. Sept. 14, 2011) (granting summary judgment to defendants where record showed that a plaintiff with a broken jaw received evaluation and treatment, including diagnostic testing, pain medications, antibiotics, change in diet, and multiple surgeries, and evidence did not suggest that two-

12

week delay between the onset of his injury and his first surgery contributed to his later problems).

Wright also complains that he was not given a liquid diet for five days after his jaw was broken. Compl., ECF No. 6 at 4; Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 4–5. He also said that he did not eat for the five days between his outside appointment and his surgery. Resp. to Renewed Mot. for Sum. J., ECF No. 49 at 6. Wright does not contest that defendant Ferguson ordered a liquid diet for him, and that after his surgery, he was prescribed a full liquid diet and soft foods. Med. R., ECF Nos. 27-2 at 2; 27-11 at 5.

It is presumed that Wright, both before and after surgery, had an obviously serious medical need for nutritious food that he could consume in his condition. Roscoe v. Collins, No. 7:17CV00494, 2020 WL 1433583, at *11 (W.D. Va. Mar. 23, 2020) (Jones, J.) (citing Jackson, 775 F.3d at 178). To prevail on a deliberate indifference claim against the defendants, Wright must show that each defendant knew or should have known of the excessive risk posed by his or her action or inaction. Wright has not made out that claim here. First, he does not allege that any of the three defendants were involved in any way with providing him with meals. It appears that Ferguson ordered a liquid diet the day Wright was injured, but as a nurse, she would not have been the person to deliver the meals to him. In addition, while Wright filed several grievances in the days following his injury, he did not complain about his diet in any of them. See ECF No. 30-1 at 3–8. Therefore, none of the defendants was on notice that he was not receiving a liquid or soft foods diet.

Moreover, Wright has not shown that he suffered weight loss or any negative consequence because he did not receive a liquid diet. The only reference to his weight was in

13

a record from the outside medical appointment on September 24, 2021, where his weight was listed as 190 pounds with a height of 6 feet, resulting in a Body Mass Index of 25.77.[2] Without another mention of his weight in the record, there is no way to tell if the fact that he did not get a liquid diet resulted in weight loss for him, or if it did, that it caused him serious physical harm or threatened his health. Roscoe, 2020 WL 1433583 at *11. Thus, on this record, Wright cannot show that the defendants intentionally, knowingly, or recklessly acted or failed to act appropriately to address his broken jaw.

Regarding the third and fourth prongs of the deliberate indifference analysis, it is uncontested that the defendants knew that Wright had a broken jaw. However, as set forth above, the record does not support a finding that defendants Ferguson, Crawford, or Wright took or failed to take action that posed an unjustifiably high risk of harm, or that Wright was harmed by their actions or lack of actions. Accordingly, defendants' motion for summary judgment is **GRANTED**.

### III. Conclusion

The evidence, when examined in the light most favorable to Wright and drawing all inferences in his favor, does not support the conclusion that a reasonable jury could find that the defendants were deliberately indifferent to his serious medical needs. Accordingly, the defendants' motion for summary judgment, ECF No. 54, is **GRANTED** and Wright's complaint is **DISMISSED**. Because the court has found that defendants were not

---

[2] Body mass index (BMI) is a measure of body fat based on height and weight. A BMI of between 25.0 and 29.9 is considered overweight. https://www.nhlbi.nih.gov/calculate-your-bmi (last viewed Sept. 15, 2025).

14

deliberately indifferent to his serious medical need, it does not address the issue of whether the defendants are entitled to qualified immunity.

An appropriate order will be entered.

It is so **ORDERED**.

ENTERED: September 16, 2025

Mike Urbanski
Senior U.S. District Judge
2025.09.16 22:35:29 -04'00'

Michael F. Urbanski
Senior United States District Judge